# UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA

## WESTERN DIVISION

| | | |
|---|---|---|
| CATHERINE FRANCES IRELAND, | ) | |
| Plaintiff, | ) | Case  No. CV 12-5436 AJW |
| v. | ) | MEMORANDUM OF DECISION |
| CAROLYN W. COLVIN[1], | ) | |
| **Acting Commissioner of the Social** | ) | |
| **Security Administration,** | ) | |
| Defendant. | ) | |

Plaintiff filed this action seeking reversal of the decision of defendant, the Commissioner of the Social Security Administration (the "Commissioner"), denying plaintiff's application for disability insurance benefits.  The parties have filed a Joint Stipulation ("JS") setting forth their contentions with respect to each disputed issue.

### Administrative Proceedings

Plaintiff, then aged 44, filed her application for benefits on January 20, 2010, alleging that she became disabled on April 10, 2009.  [Administrative Record ("AR") 131].  Plaintiff's application was denied.  [JS 2; AR 12, 61].  Plaintiff requested an administrative hearing, which was conducted before an administrative law judge (the "ALJ") on March 30, 2011.  [AR 21].  Plaintiff was represented by counsel

---

[1]   Carolyn W. Colvin is substituted as defendant in place of her predecessor in office, Michael J. Astrue.  See Fed. R. Civ. P. 25(d).

1  during the hearing and testified on her own behalf.  [AR 25-47].  Testimony also was received from a

2  vocational expert ("VE").  [AR 47-53].

3      In a written hearing decision that constitutes the Commissioner's final decision in this matter, the

4  ALJ found that plaintiff had severe impairments consisting of status post bilateral lumbar fusion and

5  psychological issues.  [AR 14].  The ALJ determined, however, that plaintiff's  impairments, singly or in

6  combination, did not meet or equal an impairment included in the Listing of Impairments (the "Listing")

7  [AR 14-15].  See 20 C.F.R. Pt. 404, Subpt. P, App. 1.  The ALJ further found that plaintiff retained the

8  residual functional capacity ("RFC") to perform a restricted range of light work, and therefore could not

9  perform her past relevant work as a surgical technician, dental assistant, or child monitor.  [AR 18].  Based

10 on the testimony of the VE, the ALJ determined that plaintiff could perform the following alternative jobs

11 that exist in significant numbers in the national economy: bench assembler, office helper, and addressing

12 clerk.  [AR 19].  The ALJ therefore concluded that plaintiff was not disabled at any time up to the date of

13 his decision.  The Appeals Council denied plaintiff's request for review.  [AR 1-3].

14                          **Standard of Review**

15     The Commissioner's denial of benefits should be disturbed only if it is not supported by substantial

16 evidence or is based on legal error.  Stout v. Comm'r, Soc. Sec. Admin., 454 F.3d 1050, 1054 (9th Cir.

17 2006); Thomas v. Barnhart, 278 F.3d 947, 954 (9th Cir. 2002).  "Substantial evidence" means "more than

18 a mere scintilla, but less than a preponderance."  Bayliss v. Barnhart, 427 F.3d 1211, 1214 n.1 (9th Cir.

19 2005).  "It is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion."

20 Burch v. Barnhart, 400 F.3d 676, 679 (9th Cir. 2005) (internal quotation marks omitted).  The court is

21 required to review the record as a whole and to consider evidence detracting from the decision as well as

22 evidence supporting the decision. Robbins v. Soc. Sec. Admin, 466 F.3d 880, 882 (9th Cir. 2006); Verduzco

23 v. Apfel, 188 F.3d 1087, 1089 (9th Cir. 1999).  "Where the evidence is susceptible to more than one rational

24 interpretation, one of which supports the ALJ's decision, the ALJ's conclusion must be upheld."  Thomas,

25 278 F.3d at 954 (citing Morgan v. Comm'r, Soc. Sec. Admin., 169 F.3d 595, 599 (9th Cir. 1999)).

26                       **Statement of Disputed Issues**

27     The disputed issues are whether the ALJ: (1) properly considered plaintiff's credibility; (2) erred in

28 not determining that plaintiff's obesity was a severe impairment; (3) properly considered plaintiff's

1  combined impairments when determining her RFC; and (4) made a proper finding at step 5 of the sequential

2  evaluation.[2]  [JS 3].

3  **Discussion**

4  **Credibility finding**

5      Plaintiff contends that the ALJ improperly rejected her testimony and statements about her subjective

6  symptoms.  [JS 3-17, 20-21].

7      Once a disability claimant produces evidence of an underlying physical or mental impairment that

8  is reasonably likely to be the source of the claimant's subjective symptoms, the adjudicator is required to

9  consider all subjective testimony as to the severity of the symptoms.  Moisa v. Barnhart, 367 F.3d 882, 885

10  (9th Cir. 2004); Bunnell v. Sullivan, 947 F.2d 341, 345 (9th Cir. 1991) (en banc); see also 20 C.F.R.

11  §§ 404.1529(a), 416.929(a) (explaining how pain and other symptoms are evaluated).  Although the ALJ

12  may then disregard the subjective testimony he considers not credible, he must provide specific, convincing

13  reasons for doing so.  Tonapetyan v. Halter, 242 F.3d 1144, 1148 (9th Cir. 2001); see also Moisa, 367 F.3d

14  at 885 (stating that in the absence of evidence of malingering, an ALJ may not dismiss the claimant's

15  subjective testimony without providing "clear and convincing reasons").  The ALJ's credibility findings

16  "must be sufficiently specific to allow a reviewing court to conclude the ALJ rejected the claimant's

17  testimony on permissible grounds and did not arbitrarily discredit the claimant's testimony."  Moisa, 367

18  F.3d at 885.  If the ALJ's assessment of the claimant's testimony is reasonable and is supported by

19  substantial evidence, it is not the court's role to "second-guess" it.  Rollins v. Massanari, 261 F.3d 853, 857

20  (9th Cir. 2001).

21      In evaluating subjective symptom testimony, the ALJ must consider "all of the evidence presented,"

22  including the following factors: (1) the claimant's daily activities; (2) the location, duration, frequency, and

23  intensity of pain and other symptoms; (3) precipitating and aggravating factors, such as movement, activity,

24  and environmental conditions; (4) the type, dosage, effectiveness and adverse side effects of any pain

25  medication; (5) treatment, other than medication, for relief of pain or other symptoms; (6) any other

26  measures used by the claimant to relieve pain or other symptoms; and (7) other factors concerning the

27  

28      [2]    At times, the parties erroneously refer to disputed issue 4 as issue 3 or 5. [See JS 35, 40-41].

1   claimant's functional restrictions due to such symptoms.  See 20 C.F.R. §§ 404.1529(c) (3), 416.929(c)(3);

2   see also Social Security Ruling ("SSR") SSR 96-7p, 1996 WL 374186, at *3 (clarifying the Commissioner's

3   policy regarding the evaluation of pain and other symptoms).   The ALJ also may employ "ordinary

4   techniques of credibility evaluation," considering such factors as (8) the claimant's reputation for

5   truthfulness; (9) inconsistencies within the claimant's testimony, or between the claimant's testimony and

6   the claimant's conduct; (10) a lack of candor by the claimant regarding matters other than the claimant's

7   subjective symptoms; (11) the claimant's work record; and (12) information from physicians, relatives, or

8   friends concerning the nature, severity, and effect of the claimant's symptoms.  See Light v. Social Sec.

9   Admin., 119 F.3d 789, 792 (9th Cir. 1997); Fair v. Bowen, 885 F.2d 597, 604 n.5 (9th Cir. 1989).

10         Because there was no evidence of malingering, the ALJ was required to articulate specific, clear, and

11   convincing reasons to support his negative credibility finding.

12         As part of her application and during the hearing, plaintiff explained that the basis of her subjective

13   complaints were two events that happened when she was 16 years old.  She explained that she suffers from

14   severe insomnia, anxiety, and depression as a result of an intruder breaking into her home and raping her.

15   [AR 37-39, 170].  She also explained that around that same time she injured her back when a pyramid she

16   and her fellow cheerleaders were building collapsed. [AR 170].  She reported during doctor's visits that she

17   injured her leg and further injured her back when she fell between two boats in the summer of 2007.  [AR

18   200, 256].  In April 2008, plaintiff reported that she further exacerbated her back injury while playing golf.

19   [AR 322].

20         During the hearing, plaintiff testified as follows.  She has pain in her right back and right leg along

21   with numbness and weakness in her right leg and foot.  [AR 32].  To relieve her pain, plaintiff uses a TENS

22   unit[3] at home and usually applies ice twice a day.  [AR 34, 40, 42].  On a bad day plaintiff needs to lie down,

23   apply ice more frequently, and soak in Epsom salt.  [AR 42].  If those remedies do not work she will try

24   medication.  [AR 42-43, 45].  Plaintiff testified that she is afraid to take her medication due to side effects.

---

26     [3]   "TENS" stands for "transcutaneous electric nerve stimulator."  Int'l Rehabilitative Sci. Inc.
27   v. Sebelius, 688 F.3d 994, 998 (9th Cir. 2012).  TENS is "used to relieve pain in an injured or
     diseased part of the body in which electrodes applied to the skin deliver intermittent stimulation to
28   surface nerves, blocking the transmission of pain signals."  Alter v. Colvin, 2013 WL 6080179, at
     *5 n.1 (D. Or. Nov. 19, 2013) (internal quotation marks and citation omitted).

[AR 42-43].  As noted by the ALJ, in prehearing disability reports plaintiff said that her medication causes forgetfulness.  [AR 16, 140].  Plaintiff also testified that she underwent a series of epidural injections.  [AR 34-35].

Plaintiff said that she can stand for about 10 to 15 minutes before the pain in her back "starts screaming," and that she can sit for about 20 to 30 minutes before she will need to apply ice.  [AR 39-41].  Plaintiff also testified that she has had insomnia "as long as [she] can remember."  [AR 36-37].  She explained that her insomnia has become worse, and that she does not know if her pain is waking her up, or if she is waking up because her 14-year old daughter is nearing the age plaintiff was when she was raped.  [AR 37-39].

Regarding plaintiff's mental condition after her alleged onset date, the ALJ noted that plaintiff said that she had sought mental health treatment with a psychiatric nurse just a week before the administrative hearing, after her anesthesiologist suggested that she would not get better until she started sleeping better.  Plaintiff testified that she had been prescribed Xanax and Prozac. [AR 29, 36; see also AR 454].  The ALJ concluded that plaintiff's mental impairment did not meet the definition of disability because there was no medical evidence that it had lasted, or was expected to last, for a period of 12 consecutive months.  [AR 14].  Nonetheless, the ALJ gave weight to plaintiff's reports of side effects from her medication and stated that he provided for those limitations in assessing her RFC.  [AR 16].  The ALJ also stated that he gave "great weight" to her overall complaints "to the extent that the longitudinal treating history, objective medical evidence, and clinical symptoms are consistent."  [AR 16].  Further, the ALJ specifically gave plaintiff "the benefit of the doubt" regarding her subjective statements about her ability to sit and stand.  [AR 16].  The ALJ found that plaintiff was restricted to light work, except that she needed to sit and stand at will, was moderately limited in attention and concentration, and could perform simple, repetitive tasks that involved no public contact and allowed her to "work in solitude and not in coordination with others."  [AR 15].  Thus, while the ALJ did not find plaintiff's subjective symptom testimony entirely credible, he carefully considered that testimony and factored it into his detailed RFC assessment.  To the extent that the ALJ found plaintiff's statements not entirely credible, the ALJ articulated sufficient reasons to support his partial rejection of plaintiff's subjective complaints.

Plaintiff limits her challenge to the ALJ's determination that plaintiff's complaints about her back

pain and its radiating effects down her right leg and foot were not entirely credible.  The ALJ noted that the objective medical evidence of record showed that plaintiff had right lower extremity radiculopathy and degenerative disc disease with collapse at L3-4 and L4-5 levels.  [AR 16, 274].  An x-ray taken on August 6, 2008, before plaintiff's alleged onset date, revealed L3-L4 two millimeter right lateral disc herniation with moderate to severe right neuroforaminal stenosis; L4-L5 two millimeter broad-based disc herniation with moderate to severe right and mild left neural foraminal stenosis; bilateral hypertrophic facet arthropathy at L3-L4 and L4-L5; and mild L2-L3 to L4-L5 degenerative disc disease.  [AR 351].  An MRI taken on April 23, 2009, after plaintiff's alleged onset date, revealed advanced degenerative spondylosis for plaintiff's age, but without significant change in the interval.  [AR 222].  Finally, an August 23, 2009 bilateral lower extremity compression venous sonogram revealed "normal" compression.  [AR 293].

In discounting plaintiff's credibility, the ALJ pointed out that plaintiff received physical therapy to decrease her back pain and edema, and that her condition improved.  [AR 17].  This reason is partially supported by the record.  The ALJ cites notes indicating that plaintiff's condition improved during two courses of physical therapy.  [AR 17].  The first set of physical therapy notes, also relied on in part by defendant [JS 18, citing AR 225, 237, 240, 242, 254-255], relate to a period two years before the relevant period, and before plaintiff's August 2009 spinal fusion.  [AR 32-33, 274].  These records do not support the credibility determination because they concern the period before plaintiff's alleged onset date.  See Sepulveda v. Astrue, 2010 WL 2990111, at *5 (C.D. Cal. July 28, 2010) (finding that the ALJ's reason for rejecting the claimant's subjective testimony was not clear and convincing because it related to a period of time years before the relevant period).  However, records from plaintiff's second course of physical therapy, after her back fusion, support the ALJ's credibility finding because they indicate that physical therapy helped plaintiff during the relevant period.  For example, a February 8, 2010 surgical follow-up note indicates that plaintiff continued physical therapy and Pilates, and that she was able to walk almost a mile on a daily basis.  [AR 365].  Further, the note indicated that plaintiff's pain had significantly improved overall and that she reported "getting better."  [AR 356].  Plaintiff was able to sit, stand, and ambulate independently, and her gait was normal.  [AR 356].  On March 1, 2010, plaintiff reported during an office visit that physical therapy was helpful.  [AR 354].  An August 23, 2010 office visit report indicated that plaintiff was continuing with physical therapy.  [AR 450].  During a November 11, 2010 office visit plaintiff indicated that, although her

pain had increased slightly, she was "doing well" with physical therapy and was gradually improving with it.  [AR 445].  The ALJ could properly rely on treatment reports indicating that plaintiff's condition improved with physical therapy during the relevant period.  See Tommasetti v. Astrue, 533 F.3d 1035, 1040 (9th Cir. 2008) (holding that the ALJ gave a clear and convincing reason for rejecting the claimant's subjective complaints where her medical records showed that she responded favorably to conservative treatment, including physical therapy); Harper v. Colvin, 2013 WL 5525695, at *7 (W.D. Wash. Oct. 4, 2013) (holding that the ALJ could properly discount the claimant's credibility in part because physical therapy resulted in significant improvement of her symptoms); see also Sample v. Schweiker, 694 F.2d 639, 643 (9th Cir. 1982) (holding that where "the totality of evidence could reasonably lead to a conclusion that whatever level of disorder existed was amenable to control," the ALJ properly found that the disorder was not disabling).

The ALJ also relied on plaintiff's statements during her February 8 and March 1, 2010 doctor's office visits, including her assertion that she was doing "much better" after her surgery.  [AR 17, 354].  Plaintiff said at the time that she was 60 to 70 percent better.  [AR 354].  The ALJ noted that although plaintiff continued to report low back pain, medication helped her sleep and reduced her pain.  [AR 17, 354, 356].  Plaintiff also denied weakness, numbness, or paresthesias.  Examination of her back did not reveal any tenderness over the facet joints, and sensory and motor functions were intact to both lower extremities.  [AR 354-355].

Further, the ALJ noted that plaintiff received numerous caudal epidural steroid injections, and that she reported that the injections helped alleviate her pain.  [AR 17, 393-399, 410-415].  For example, in August 2010, plaintiff received her first injection and reported a 30 percent reduction in pain.  While she reported some tingling in her right leg, she stated that she was "very pleased."  [AR 398].  In September 2010, after two injections, plaintiff reported 100 percent relief of her right leg pain and a 75 percent reduction in her lower back pain.  [AR 397].  After that it appears plaintiff stopped receiving injections.  In November 2010 and February 2011, plaintiff again complained about sharp pain that made her "tearful[]." [AR 413, 415, 419].  After further injections, however, she reported a 30 percent improvement.  [AR 410]. The ALJ properly discounted plaintiff's subjective testimony to the extent it conflicted with the medical record and statements she made during treatment.  See Carmickle v. Comm'r, Soc. Sec. Admin., 533 F.3d

1155, 1161 (9th Cir. 2008) ("Contradiction with the medical record is a sufficient basis for rejecting the claimant's subjective testimony."); Matthews v. Shalala, 10 F.3d 678, 679-680 (9th Cir. 1993) (holding that the ALJ properly considered the claimant's inconsistent statements as part of his credibility analysis); see also Warre v. Comm'r, Soc. Sec. Admin., 439 F.3d 1001, 1006  (9th Cir. 2005) ("Impairments that can be controlled effectively with medication are not disabling.").

Finally, the ALJ reviewed Dr. Semon Bader's June 7, 2010 consultative orthopedic examination report.  [AR 17-18].  The examination showed that plaintiff walked with a normal cadence and velocity. She was able to toe walk, heel walk, and "squat down bending her knees about 60 degrees and rising citing back pain." [AR 374].  Examination of the cervical spine revealed normal attitude and posture of the head; no significant tenderness to palpation; no visible or palpable spasm appreciated; range of motion was forward flexion of 30 degrees[4] and lateral bending of 25 degrees; and a negative result on the Spurling's test.[5]  [AR 374].  Further, examination of the thoracic spine indicated normal kyphosis and no tenderness to palpation. [AR 374].  The examination of the lumbar spine revealed a normal lordotic curve; level pelvis; no significant tenderness to palpation; no spasm; and no tenderness in the sciatic notches or gluteal muscles. Plaintiff could bend forward about 60 degrees until back pain, laterally bend 20 degrees, and her extension was 15 degrees. [AR 374].  Plaintiff's straight-leg raising was negative in the supine position bilaterally and in the seated position bilaterally to 90 degrees.  [AR 374].

Based on the examination, Dr. Bader concluded that plaintiff was able to lift and carry no more than 20 pounds occasionally and 10 pounds frequently due to neck and back pain. [AR 376].  Further plaintiff was able to walk and stand no more than six hours out of an eight-hour day due to her back pain. [AR 376]. She could sit no more than six hours out of an eight-hour day.  [AR 376].  Plaintiff could climb, balance, kneel, crawl, bend, crouch, and stoop occasionally due to neck, back and foot pain. [AR 377].  The ALJ gave this opinion great weight except to the extent that it conflicted with plaintiff's subjective statements

---

[4]     The ALJ erroneously stated that plaintiff's forward flexion was only 25 degrees. [AR 17].

[5]     The Spurling's test is a paraspinal percussion test which involves "tapping each vertebra with a reflex hammer while the patient stands erect with back slightly flexed." Lemay v. Astrue, 2010 WL 582057, at *4 n.5 (C.D. Cal. Feb. 12, 2010) (citation omitted).  A positive Spurling sign produces a pain in a vertebra and radiating down into a leg, and is significant for spinal nerve root compression at the level of that vertebra. Lemay, 2010 WL 582057 at *4 n.5.

about her inability to sit or stand for long periods. [AR 17-18]. The ALJ gave plaintiff the benefit of the doubt and concluded that she was more restricted in that regard than Dr. Bader had found. [AR 18].

The ALJ also relied on a June 16, 2010 RFC assessment by a state agency medical consultant, A. Faigao, concluding that it was consistent with Dr. Bader's opinion. [AR 18]. Dr. Faigao concluded that plaintiff was partially credible, and noted that although plaintiff has back problems, she is not precluded from all work. [AR 383]. No treating or examining source opined that plaintiff is disabled or unable to work.

The ALJ could properly consider those physicians' assessments in weighing plaintiff's credibility. Matthews, 10 F.3d at 680 (holding that the ALJ did not err in discounting the claimant's assertions that his back impairment precluded employment where no treating or examining doctor stated or implied that the claimant's impairments were disabling, and where their reports did not disclose findings indicative of disability); Light, 119 F.3d at 792 (stating that the ALJ may consider information from physicians regarding the nature and effect of a claimant's symptoms). Contrary to plaintiff's argument [JS 15], the ALJ was allowed to consider the lack of objective medical evidence corroborating the alleged severity of plaintiff's subjective symptoms. See Burch, 400 F.3d at 681 ("Although lack of medical evidence cannot form the sole basis for discounting pain testimony, it is a factor that the ALJ can consider in his credibility analysis."). The ALJ's reasons for partially rejecting plaintiff's subjective testimony were specific, clear, and convincing, and therefore the ALJ did not err in evaluating the credibility of plaintiff's subjective complaints.

**Obesity**

Plaintiff contends that the ALJ did not properly find plaintiff's obesity to be a severe impairment. [JS 22-26].

In her January 18, 2010 disability report, plaintiff said that she was five feet, nine inches tall, and weighed 200 pounds. [JS 22; AR 139, 150]. Plaintiff submitted an attachment which shows that, according to the National Institutes of Health, this translates to a body mass index ("BMI") in the overweight category, not the obese category. [JS, Ex. A]. Plaintiff nonetheless contends that her weight varied and at one point reached 260 pounds, within the obese range. [JS 22 & Ex. A; AR 320-321]. Plaintiff's treating physician diagnosed her with obesity on one of the two occasions documented in the record when she reached her

highest weight of 260 pounds, on March 13, 2009, shortly before her alleged onset date. [AR 320]. During an August 2009 surgical follow-up, Dr. Fardad Mobin advocated weight loss management to plaintiff. [AR 360]. In October 2009, he again advocated weight loss and dieting, in addition to core training, muscle strengthening, and physical therapy, to help maximize her recovery from surgery. [AR 361]. In February 2010, Dr. Mobin said he again stressed the need for weight loss and dieting to help plaintiff's well-being and lumbar spine, but also noted that she was able to sit, stand, and ambulate independently, and that her gait was normal. [AR 356]. Although plaintiff's weight has fluctuated over time, it appears to have decreased somewhat during the relevant period. [JS 22; AR 321 (8/3/08 - 260 lbs.); 320 (3/13/09 - 260 lbs.); 319 (4/1/09 - 249 lbs.); AR 318 (4/6/09 - 248 lbs.); 317 (4/9/09 - 223 lbs.); 139 & 150 (1/18/10 - 200 lbs.); 356 (2/8/10 - 240 lbs.); 316 (6/1/10 - 226 lbs.)].

Plaintiff relies on SSR 02-01p [JS 22], which states that "obesity is a 'severe' impairment when, alone or in combination with another medically determinable physical or mental impairment(s), it significantly limits an individual's physical or mental ability to do basic work activities." SSR 02-01p, 2002 WL 34686281, at *4. Plaintiff has pointed to her weight and corresponding BMI on given occasions; however, "[t]here is no specific level of weight or BMI that equates with a 'severe' or a 'not severe' impairment." SSR 02-01p, 2002 WL 34686281, at *4. What plaintiff has not done is point to *any* evidence in the record suggesting that her obesity caused a limitation in function greater than that comprehended by the ALJ's RFC finding.

There is no evidence of obesity-related functional limitations that were overlooked by the ALJ, and, as mentioned, no treating or examining source opined that plaintiff was disabled or unable to work due to any of her conditions. The mere fact that plaintiff was obese or was diagnosed with obesity says little or nothing about the functionally limiting effects of that condition. See Sample, 694 F.2d at 642-643 (noting that the existence of a diagnosed emotional disorder "is not per se disabling," and stating that "there must be proof of the impairment's disabling severity"); Hinkle v. Apfel, 132 F.3d 1349, 1352 (10th Cir. 1997) (stating that a claimant "must show more than the mere presence of a condition or ailment" at step two) (citing Bowen v. Yuckert, 482 U.S. 137, 153 (1987)).

For all of these reasons, the ALJ did not commit legal error in his evaluation of plaintiff's obesity and its functional effects. See Burch, 400 F.3d at 684 (holding that the ALJ "adequately considered [the

claimant's] obesity in his RFC determination" where the claimant "has not set forth, and there is no evidence in the record, of any functional limitations as a result of her obesity that the ALJ failed to consider").

**Plaintiff's combined impairments**

Plaintiff contends that the ALJ did not properly consider the combined effect of her impairments, in particular her pain and obesity.  [See JS 23-29].

Regarding the effects of her pain, plaintiff merely repeats the same arguments she made in challenging the ALJ's credibility finding, that is, that her pain interferes with her ability to sit, stand, and walk. [JS 26-28].  For the reasons discussed above, the ALJ properly discounted the credibility of plaintiff's subjective complaints. [AR 16-17].

Regarding plaintiff's allegations that the ALJ failed to consider the interplay between her back pain and her obesity, plaintiff repeats her contention that Dr. Mobin advocated for weight reduction and dieting.[6] [JS 29, 34].  Plaintiff also repeats her contention that the ALJ erred in not finding her obesity "severe." [JS 29-30].  The Court already has rejected that argument.  As noted above, there is no evidence in the record suggesting that her obesity, either by itself or in combination with her pain, caused any limitation in function greater than that comprehended by the ALJ's RFC finding.  The ALJ properly evaluated the examining and nonexamining assessments by Dr. Bader and Dr. Faigao, and no treating or examining source opined that plaintiff was disabled or unable to work due to any of her symptoms.

Plaintiff has failed to show that the ALJ improperly considered the combined effects of her subjective back pain and her obesity.  See Lombardo v. Schweiker, 749 F.2d 565, 567 (9th Cir. 1984) (per curiam) (rejecting the contention that the ALJ failed to consider the combined effect of the claimant's impairments, and observing that the ALJ's "detailed evaluation of the medical evidence" and "summaries of the many physicians' reports suggest just the opposite; the physicians subjected Lombardo to rigorous and thorough examination.").

**Step five**

Plaintiff contends that the ALJ's finding of nondisability at step five was in error because the

_____

[6]   Plaintiff incorrectly states that two physicians opined that weight loss was necessary for recovery from surgery. [JS 34].  Both of the neurosurgical spinal follow-up reports cited by plaintiff are from Dr. Mobin. [AR 356, 361].

1  hypothetical questions posed to the VE did not set forth all of plaintiff's limitations.  [JS 35-42].

2  The ALJ's job at the fifth step in the sequential evaluation procedure is to pose hypothetical

3  questions that set out all of the claimant's impairments for the consideration of the VE, who then "translates

4  these factual scenarios into realistic job market probabilities . . . ." Tackett v. Apfel, 180 F.3d 1094, 1101

5  (9th Cir. 1999).  Hypothetical questions posed to the VE must accurately describe all of the limitations and

6  restrictions of the claimant that are supported by substantial evidence in the record.  Robbins, 466 F.3d at

7  886; Tackett, 180 F.3d at 1101. The ALJ "is free to accept or reject restrictions in a hypothetical question

8  that are not supported by substantial evidence." Greger v. Barnhart, 464 F.3d 968, 973 (9th Cir. 2006)

9  (quoting Osenbrock v. Apfel, 240 F.3d 1157, 1164-1165 (9th Cir. 2001)).

10  Plaintiff contends that the ALJ erroneously omitted from the hypothetical questions that plaintiff

11  "needed to lie down during the day." [JS 39]. The ALJ permissibly discounted plaintiff's subjective

12  testimony about her functional limitations, including her need to lie down during the day, and he did not find

13  that such a limitation was supported by the record.  Therefore, the ALJ did not err in excluding that

14  particular limitation from his hypothetical questions.  See Rollins, 261 F.3d at 857 ("Because the ALJ

15  included all of the limitations that he found to exist [in his hypothetical questions], and because his findings

16  were supported by substantial evidence, the ALJ did not err in omitting the other limitations that [plaintiff]

17  had claimed, but had failed to prove.").

18  Plaintiff's remaining argument is rather vague, but it appears that she contends that the ALJ erred

19  by failing to include all of the limitations contained in his RFC finding in a single hypothetical question to

20  the vocational expert, and therefore that the vocational expert's testimony was not substantial evidence

21  supporting the ALJ's finding of nondisability at step five.

22  The ALJ's second hypothetical question incorporated all of the nonexertional limitations contained

23  in the ALJ's RFC finding, namely, that the person needed to sit and stand at will, was moderately limited

24  in attention and concentration, and was limited to simple, repetitive tasks that involved no public contact,

25  allowed her to work in solitude, and did not require coordination with others. [AR 15, 50-52].  The second

26  hypothetical question also assumed an exertional limitation to sedentary work. The ALJ actually found that

27  plaintiff could meet the exertional demands of light work, which encompasses the ability to meet the

28  exertional demands of sedentary work. [AR 15, 50-52]. See 20 C.F.R. §§ 404.1567(a)&(b), 416.967(a)&(b).

The ALJ's second hypothetical question accurately reflects all of plaintiff's limitations that are supported by the record because her RFC subsumes the ability to perform any jobs that the second hypothetical person could perform.  In response to the second hypothetical question, the VE testified that the hypothetical person could perform the sedentary, unskilled job of addressing clerk, also known as addressor, Dictionary of Occupational Titles ("DOT") job number 209.587-010. The VE testified that there are 11,000 such jobs nationally and 1,000 regionally, which constitutes a significant number of jobs for purposes of the step 5 finding.   See Meanel v. Apfel, 172 F.3d 1111, 1115 (9th Cir. 1999) (holding that between 1000 and 1500 jobs in the local area was a significant number of jobs) (citing Barker v. Secretary of Health & Human Servs., 882 F.2d 1474, 1479 (9th Cir. 1989)).   Therefore, the VE's testimony in response to the second hypothetical question is substantial evidence supporting the ALJ's finding that plaintiff is not disabled at step 5.

The ALJ's first hypothetical question includes nonexertional limitations that differ somewhat from those contained in the ALJ's RFC finding.   In response to the first hypothetical question, the VE testified that the person could perform the DOT jobs of bench assembler, office helper, and addressing clerk. [AR 15, 48-50]. Since the VE's testimony in response to the second hypothetical question constitutes substantial evidence supporting the ALJ's step-5 finding, any error by the ALJ in finding that plaintiff can perform the two alternative jobs identified by the VE solely in response to the first hypothetical question (bench assembler and office helper) is harmless.  See McLeod v. Astrue, 640 F.3d 881, 886-888 (9th  Cir. 2011) (holding that the harmless error rule ordinarily applied in civil cases applies in social security disability cases, and that the burden is on the party attacking the agency's decision to show that prejudice resulted from the error) (citing Shinseki v. Sanders, 556 U.S. 396, 406-409 (2009)).

### Conclusion

For the reasons stated above, the Commissioner's decision is supported by substantial evidence and is free of legal error.  Accordingly, the Commissioner's decision is **affirmed**.

**IT IS SO ORDERED.**

December 19, 2013

ANDREW J. WISTRICH
United States Magistrate Judge